IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JANENE LENORA SHIPLEY, :
:
    Plaintiff, :
: CIVIL ACTION
    v. :
: NO. 09-4189
THE CITY OF CHESTER, et al., :
:
    Defendants. :

**OPINION**

Slomsky, J.                                                                                                                                   April 15, 2010

## I.    INTRODUCTION

On September 22, 2009, *pro se* Plaintiff, Janene Lenora Shipley filed this civil rights action against the City of Chester, Pennsylvania (Defendant City) and Crozer Chester Medical Center (Defendant Crozer). (Doc. No. 3.) The Complaint alleges that the actions of Defendants after a shooting involving Plaintiff's cousin violated Plaintiff's civil rights and her rights under state law.

On February 18, 2010, Defendant City filed a Motion to Dismiss Plaintiff's Complaint (Doc. No. 6). On March 15, 2010, after this Court granted Defendant Crozer's motion for an extension of time to file a response (Doc. No. 9), Defendant Crozer also filed a Motion to Dismiss Plaintiff's Complaint (Doc. No. 13). On March 22, 2010, Plaintiff filed a Response in Opposition to Defendants' Motions (Doc. No. 14).

Currently before the Court are Defendant City's Motion to Dismiss (Doc. No. 6) and Defendant Crozer's Motion to Dismiss (Doc. No. 13). For the reasons that follow, the Court will grant both Defendant City's and Defendant Crozer's Motions to Dismiss in their entirety.

## II.  STATEMENT OF FACTS

On September 1, 2009, Plaintiff was present after a shooting involving Kymeen Bennett, Plaintiff's cousin. (Pl. Compl., ¶¶1-4.) Bennett was the victim of the shooting, which occurred on the 3100 block of West 10th Street in Chester, Pennsylvania. (Id. at ¶4.) Plaintiff arrived on the scene before the first responders. (Id. at ¶8.) Also on the scene before the arrival of the first responders was Dawn Mclewee, an off-duty employee of Crozer Chester Medical Center. (Id. at ¶6.) According to Plaintiff, Mclewee "[g]ave the certificate of merit that Mr. Bennett had a pulse but [stated that] he need[ed] some oxygen." (Id.)

Seven to ten minutes after the first 911 call, officers of the Chester Police Department arrived on the scene. (Id. at ¶8.) Crozer Chester Medical Center emergency medical employees arrived four to seven minutes later. (Id. at ¶10.) As Crozer employees attempted to revive Bennett, Plaintiff continually called Bennett's name. (Id. at ¶12.) An unnamed Crozer employee told Plaintiff to "shut the f**k up" so he could do his job, at which point it appears Plaintiff stopped screaming. (Id. at ¶11 [sic].)

After an unnamed Crozer employee pronounced Bennett dead, Plaintiff protested the pronouncement, insisting that the Crozer employee take Bennett to the hospital. (Id. at ¶¶15-16.) An unnamed Crozer employee allegedly "jumped in [Plaintiff's] personal space," and again told Plaintiff to "shut the f**k up," and to stand back. Plaintiff responded by saying "hit me you won't be the first cop to hit me!" (Id. at ¶17.) The unnamed Crozer employee informed Plaintiff he was not a cop.

According to Plaintiff, "[t]he cops than [sic] turned into vicious pit bulls and started cursing and hollering and screaming at everyone," as they attempted to direct everyone to leave the scene.

(Id. at ¶¶19, 22.) Plaintiff continued to protest the pronouncement of Bennett's death. (Id. at ¶¶18-22.) Officer Jackson warned Plaintiff that if she did not stop yelling and return home he would arrest her. (Id. at ¶20.) Plaintiff went to the front step of Bennett's home but continued to protest the officers' actions. (Id. at ¶¶22, 16 [sic].) One officer told Plaintiff to "shut the f**k up," and get in the house. (Id. at ¶17 [sic].)

Although Plaintiff entered Bennett's home, she continued to protest the officers' actions, yelling out an open window. (Id. at ¶19 [sic].) An officer entered Bennett's home again telling Plaintiff to "shut the f**k up," to which Plaintiff replied that she did not have to because she was in the house. (Id. at ¶20 [sic].) The officer proceeded to place Plaintiff in handcuffs, informing Plaintiff she was being arrested for her failure to obey his orders to be quiet. (Id. at ¶23.) According to Plaintiff, the officer then "dragged [her] using assistive [sic] force threw [sic] the street and put [her] in the back of the police car." (Id.)

Shortly thereafter, the officer returned to the vehicle and asked if Plaintiff was calm. (Id. at ¶25.) Plaintiff replied that she was and was released. (Id. at ¶26.) Plaintiff was treated at Defendant Crozer for injuries to her wrist caused by handcuffs. (Id. at ¶27.)

Plaintiff requests $5.5 million in damages for pain and suffering for "[d]eformation [sic] of character, disorderly conduct, recklessly endangering the welfare of a minor, misuse of position, menacing, false imprison [sic], the intentional use of excessive force, false arrest, intimidation, and racial profiling," (Id. at ¶¶29, 31) and for violation of her civil rights under 42 U.S.C. § 1983.[1]

---

[1] Although Plaintiff did not specifically allege a violation of her civil rights under Section 1983, the Court will infer such charge from her Complaint.

## III. STANDARD OF REVIEW

Defendants City and Crozer have moved to dismiss all claims for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). In deciding a Motion to Dismiss pursuant to Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under a reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (reasoning that this statement of the Rule 12(b)(6) standard remains acceptable following U.S. Supreme Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) (internal quotations omitted)).

To withstand a Motion to Dismiss under Rule 12(b)(6), "factual allegations must be enough to raise a right to relief above the speculative level." Phillips, 515 F.3d at 234. When a complaint contains well-pleaded factual allegations, "a court should assume their veracity and determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009) (reaffirming rationale set forth in Twombly). However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Id. In other words, a complaint has to "show" an entitlement to relief with its facts. Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009). See also McTernan v. City of York, 577 F.3d 521, 532 (3d Cir. 2009) (examining Iqbal's requirement for a complaint to state a plausible claim for relief to survive a Motion to Dismiss); Mann v. Brenner, No. 09-2461, 2010 WL 1220963, *4 (3d Cir., March 30, 2010) (explaining that a 'formulaic recitation of the elements' of a constitutional discrimination claim will not suffice to state a valid claim) (citation omitted).

## IV. DISCUSSION

This Court has subject matter jurisdiction over Plaintiff's Section 1983 civil rights claims pursuant to federal question jurisdiction, 28 U.S.C. § 1331. This Court has subject matter jurisdiction over Plaintiff's remaining state law claims pursuant to 28 U.S.C. § 1367 which provides that a "district court[] shall have supplemental jurisdiction over all claims so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." State law claims "form part of the same case or controversy" as an action within the court's original jurisdiction if the state law claims share a "common nucleus of operative fact" with the claims over which the court has original jurisdiction. United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).

### A. Plaintiff's Federal Claims Under 42 U.S.C. § 1983

Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Section 1983 does not create substantive rights. Rather, it is "a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes it describes." City of Monterey v. Del Monte Dunes, 526 U.S. 687, 749 n.9 (1999); Gruenke v. Seip, 225 F.3d 290, 298 (3d Cir. 2000). To prevail in an action under Section 1983, a plaintiff must prove: (1) a violation of a right secured by the Constitution and the laws of the United States and (2) that the alleged deprivation was committed by a person acting under color of state

law.² West v. Atkins, 487 U.S. 42, 48 (1988); Shuman ex rel. Shertzer v. Penn Manor School Dist., 422 F.3d 141, 146 (3d Cir. 2005).

    1.  Section 1983 as Applied to Defendant City

In Monell v. Dept. of Soc. Servs. of the City of N.Y., 436 U.S. 658, 690 (1978), the Supreme Court stated that municipal entities are subject to Section 1983 liability only under limited circumstances. A plaintiff may bring a Section 1983 claim for damages against a local government entity only when the alleged unlawful action was taken pursuant to a policy or custom of the municipality, not when the action was a random act of an official.³ Id. at 690-91. "[T]he action that is alleged to be unconstitutional [must] implement[] or execute[] a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. . . . [or] pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Id.; see also Williams v. Borough of West Chester, Pa., 891 F.2d 458, 467 (3d Cir. 1989) (dismissing a suit against a city for the acts of one of its police officers).

---

²City Defendants apparently do not contest that their actions were conducted under color of state law.

³ A municipality may not be held liable under Section 1983 on the basis of *respondeat superior*. In other words, a municipality may not be held liable simply because it hired an employee who became a constitutional wrongdoer. Monell, 436 U.S. at 691 ("In particular, we conclude that a municipality cannot be held liable *solely* because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.").

Accordingly, Plaintiff's § 1983 claim against Defendant City is viable only if she claims that the actions of the police officers were taken pursuant to an unlawful policy or custom of the City. Plaintiff here does not allege that the police officers acted pursuant to any unlawful city policy or custom. Rather, Plaintiff focuses on the individual actions of particular officers, acting independently of an officially promulgated policy. (See Pl. Compl. at ¶¶19, 20, 17 [sic], 20-22 [sic], 23-25.) Consequently, Plaintiff's claim against Defendant City for violation of her civil rights pursuant to Section 1983 will be dismissed.

        2.        Section 1983 as Applied to Defendant Crozer

Section 1983 authorizes claims against defendants acting under color of state law. Generally, federal courts treat the color of state law requirement of Section 1983 as analogous to the state action requirement of the Fourteenth Amendment of the United States Constitution. Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 929 (1982) ("[T]he statutory requirement of action 'under color of state law' and the 'state action' requirement of the Fourteenth Amendment are identical."). "Like the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) (quotation omitted).

There are limited instances, however, when the Supreme Court has determined that a private party's involvement with a local government supports the conclusion that the private party engaged in "state action." These instances include: (1) when a private party carries out a public function that has been "traditionally exclusively reserved to the State," Jackson v. Metro. Edison Co., 419 U.S. 345, 352 (1974); (2) when the private party and the local government share a "sufficiently close

nexus," because the local government ordered the private action or "exercised coercive power [over] or . . . significant encouragement" of the private action, Blum v. Yaretsky, 457 U.S. 991, 1004 (1982); (3) when a private party and the local government jointly participate in the alleged constitutional violation as part of some type of conspiracy, Lugar, 457 U.S. at 931-32; or (4) when the private party is "pervasively intertwined" with the local municipality. Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 291 (2001).

Plaintiff has failed to allege any facts to indicate that Defendant Crozer had a sufficiently close connection to Defendant City, such that Defendant Crozer's actions constitute action under color of state law. Plaintiff's complaint alleges that her altercation with the Crozer employee (see Pl. Compl. ¶¶11-18) was completely separate from her altercations with the City police officers. (See Pl. Compl. ¶¶19-26). In fact, Plaintiff alleges that the Crozer employee indicated: "I'm not a cop I work for Crozer." (Pl. Compl. ¶18.)

Because Defendant Crozer is a private party and because Plaintiff has failed to allege any facts that even raise the inference that Defendant Crozer had sufficient involvement with the local government to the extent required by any of the four (4) instances noted above, Plaintiff's claim against Defendant Crozer under Section 1983 will be dismissed.

B. Plaintiff's State Law Claims

Having dismissed Plaintiff's federal law claims under Section 1983, the Court is left with Plaintiff's state law claims based on various tort theories including, *inter alia*, defamation, false imprisonment, and false arrest. As described above, under 28 U.S.C. § 1367, a federal court may exercise jurisdiction over state law claims "that are so related to claims in the action within [the

court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." See Regalbutto v. City of Philadelphia, 937 F.Supp. 374, 377 (E.D. Pa. 1995). "Stated otherwise, a prerequisite to the federal court's exercise of pendant jurisdiction over a plaintiff's state law claims is that at least one claim based on the court's original diversity or federal question jurisdiction is before the court." Polite v. Rendell, No. 08-5329, 2010 WL 1254334, *4 (E.D. Pa., April 1, 2010); Kelley v. Bradford County, No. 07-1531, 2010 WL 1136313, at *10 (M.D. Pa. Mar. 23, 2010) (declining to exercise supplemental jurisdiction over Plaintiff's state law claims, where dismissal of the claims over which the court had original jurisdiction occurred by way of a motion for summary judgment).

For the reasons stated, the Court will dismiss Plaintiff's federal claims and, consequently, will decline to exercise supplemental jurisdiction over the remaining state law claims. See also Gibbs, 383 U.S. at 726 ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

## V.     CONCLUSION

For the foregoing reasons, the Court will grant Defendant City's and Defendant Crozer's Motions to Dismiss in their entirety. Plaintiff has not sought leave to amend the Complaint. Nonetheless, "the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile." Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d Cir. 2002). Under all circumstances here, amendment of the Complaint would be futile. It is well-settled that not all grievances give rise to valid civil rights claims. Accordingly, Plaintiff's Complaint will be dismissed with prejudice. An appropriate Order follows.